| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| April Scarlott | § | |
| | § | |
| *versus* | § | Civil Action 4:10-cv-04865 |
| | § | |
| Nissan North America, Inc., et al. | § | |

**DEFENDANT NISSAN NORTH AMERICA, INC.'S
MOTION FOR AMENDED JUDGMENT AND FOR FEES AND COSTS**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to 28 U.S.C. §§ 1920, 1927, Federal Rules of Civil Procedure 52(b) and 54, and this Court's Order entered September 25, 2013 [Doc. No. 129], Defendant Nissan North America, Inc. ("NNA") files this Motion for Amended Judgment, seeking the Court enter judgment in favor of NNA on its counterclaim and award NNA its fees and costs. In support of the foregoing, NNA would respectfully show the Court as follows:

**I.
SUMMARY OF ARGUMENT**

For almost *four years* now, Ms. April Scarlott and her attorneys have maintained this frivolous suit against NNA. NNA has expended substantial time and resources defending against the vexatious and unreasonable pursuit of Ms. Scarlott's claims by Ms. Scarlott and her counsel, Noah Radbil, Aaron Radbil, and the law firm of Weisberg and Meyers, LLC. *See also* 28 U.S.C. § 1927. By way of this Motion, NNA now seeks recovery of all attorneys' fees, taxable court costs, and expenses, totaling $201,108.81.[1]

---

[1] NNA has incurred $180,210.00 in fees and $8,196.59 in taxable court costs. NNA also incurred an additional $12,702.22 in expenses.

Ms. Scarlott purchased a 2006 Nissan Murano new from an authorized Nissan dealer. At Ms. Scarlott's direction and without NNA's knowledge, a third party vendor replaced the Murano's factory stock rearview mirror with one equipped with a HomeLink system. The aftermarket mirror was improperly installed and caused the Murano to experience electrical problems.

On August 28, 2013, this Court ruled on NNA's Motion for Summary Judgment. Specifically, the Court made the following findings:

- Nissan has exhaustively showed that her problems were caused by Hurricane's installation.[2]

- Scarlott voluntarily - after interrogation of her counsel by the court - abandoned her claims against Nissan North America for negligence, unjust enrichment, and promissory estoppel. They are mentioned to illustrate that she claimed eight legal theories against four parties ***without legal or factual support***.[3]

- ***April Scarlott will take nothing from Nissan North America because her claims are not supported by facts or law***.[4]

Based on these findings, the Court entered Final Judgment, ordering Ms. April Scarlott take nothing from Nissan North America, Inc., Nissan Motor Acceptance Corp., Clear Lake Nissan, Hurricane Glass, and Hurricane Auto Care & Accessories, Inc.[5]

In the live pleadings, there remains, however, NNA's counterclaim against Ms. Scarlott for her violation of the Texas Deceptive Trade Practices Act ("DTPA").[6] NNA asserts, and has *proven* throughout the multitude of filings, that Ms. Scarlott's claims brought under the DTPA, including those for breach of warranty and alleged violations of the DTPA, are "groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." TEX. BUS. & COM.

---

[2] *See* Opinion on Summary Judgment [Doc. No. 119], already on file herein, at § 4(A).
[3] *Id*. at §4(E) (emphasis added).
[4] *Id*. at § 7 (emphasis added).
[5] *See* Final Judgment [Doc. No. 120], already on file herein.
[6] *See* Defendant Nissan North America, Inc.'s First Amended Counterclaim [Doc. No. 21], already on file herein.

CODE § 17.50(c). The Court's findings in the Opinion on Summary Judgment explicitly recite Ms. Scarlott's claims "are not supported by facts or law."[7] As such, NNA is entitled to recover its attorneys' fees and court costs pursuant to Texas Business and Commerce Code § 17.50(c).

NNA also requests this Court enter an Order finding Plaintiffs' counsel, Noah Radbil, Aaron Radbil, and the law firm of Weisberg and Meyers, LLC, *personally liable for the total amount of NNA's fees and expenses*. Just months after NNA initially answered suit, counsel for NNA sent a written correspondence to Weisberg and Meyers, advising them that, based upon NNA's investigation, the aftermarket review mirror caused the Murano's electrical problems, and such was not covered under NNA's new vehicle, limited warranty.[8] NNA also provided Plaintiff's counsel sworn testimony from Clear Lake Nissan substantiating same. Yet, Plaintiff's counsel refused to dismiss the suit.[9] Instead, Noah Radbil, Aaron Radbil, and Weisberg and Meyers, LLC caused NNA to spend approximately two hundred thousand dollars defending a breach of warranty suit for a part not covered under warranty and not installed by NNA. Had Weisberg and Meyers, LLC properly investigated its claims against NNA before filing suit, none of this harm would have occurred. Had counsel considered NNA's explanation and evidence provided early in the litigation, NNA would not have incurred these costs. In this case and others, the attorneys of Weisberg and Meyers, LLC have made a practice of extorting settlements based on the threat of defense costs, regardless of the merits of the case. Their actions were unreasonable and vexatious, and therefore, Noah Radbil, Aaron Radbil, and Weisberg and

---

[7] *See* Opinion on Summary Judgment [Doc. No. 119], already on file herein, at §§ 4, 7.
[8] *See* correspondence from NNA's counsel to Weisberg and Meyers, dated February 15, 2010, attached as Exhibit 1.
[9] NNA incorporates by reference its Motion for Sanctions [Doc. No. 101] and First Amended Motion for Summary Judgment [Doc. No. 63], including all arguments and authorities set forth therein and evidence attached thereto.

Meyers, LLC should be personally liable for all of NNA's fees and expenses, totaling $201,108.81.

NNA respectfully requests this Court amend the Final Judgment to award NNA its costs and expenses incurred in defending Plaintiff's frivolous claims.

## II.
### STATEMENT OF MATERIAL FACTS

**A. *An Aftermarket, Non-Nissan Accessory Component Caused the Vehicle's Electrical Problems.***

This Court is well-versed in the factual background of this matter. For purposes of convenience, however, NNA will briefly summarize. Plaintiff April Scarlott purchased the subject 2006 Nissan Murano on December 26, 2006 from Clear Lake Nissan ("Clear Lake"),[10] an independently owned and operated dealership. Unknown to NNA,[11] the Murano was later modified with a number of aftermarket accessories and features, including the installation of leather interior, a sunroof, and wheels/tires/rims.[12] In addition, a third party vendor, Hurricane Glass, replaced the Murano's factory stock rearview mirror with one equipped with a HomeLink system.[13] NNA was not informed its factory mirror was replaced.[14] NNA had no role in deciding (1) whether to replace the original mirror, (2) where to take the Murano to have the aftermarket mirror installed, or (3) what aftermarket mirror would be installed.[15]

For the next two years, the Murano experienced intermittent electrical problems until Clear Lake found the aftermarket mirror was incorrectly installed. Repairs were made and the

---

[10] *See* excerpts of the deposition of Bob Gore ("Gore Depo."), attached as Exhibit 2, at 16.17-18.
[11] *See* Gore Depo., at 15.12-24.
[12] *Id.* at 14.18-22.
[13] *Id*. at 16.23-18.21.
[14] *Id.*
[15] *Id.*

Murano has not experienced any other issues.[16] Both NNA and Clear Lake absorbed the costs of these many repair attempts.

### B. Plaintiff and Her Counsel Refused to Dismiss the Suit.

Ms. Scarlott filed suit against NNA in October 2009. NNA timely filed an Answer and began to investigate Plaintiff's claims. Importantly, Ms. Scarlott's counsel produced repair records to NNA that indicated the after-market mirror caused the Murano's electrical problems. NNA immediately requested Ms. Scarlott dismiss her claims against it.[17] Instead, Ms. Scarlott and her counsel at Weisberg and Meyers, LLC began a campaign of aggression and harassment through their continued pursuit of a baseless suit, knowing NNA did not install or warrant the aftermarket product, and knowing NNA had, in fact, paid a number of Plaintiff's warranty claims it should not have paid.[18] Thus, due to the frivolous and outrageous nature of Ms. Scarlott's claims, along with her counsel's unethical and unreasonable tactics, NNA has incurred substantial fees and costs.[19]

### C. NNA was Forced to File and/or Respond to a Multitude of Pleadings in Defense of Plaintiff's Baseless Claims.

Ms. Scarlott's brazen prosecution of this groundless suit against NNA for almost four years forced NNA to research, draft, respond to, and file numerous pleadings to protect its interests.[20] As this Court is well aware, there are literally *more than a hundred pleadings* on file in this case. Counsel for NNA was forced to either draft, review and/or respond to each of them. Those pleadings include, but are not limited to, the following:

1. Corporate Disclosure Statement [Doc. No. 8];

---

[16] *Id*. at 35.1-3; *see also* excerpts of the deposition of April Scarlott ("Scarlott Depo."), attached as Exhibit 3, at 82.7-83.9.
[17] *See* Exhibit 1.
[18] *See* electronic correspondence from Plaintiff's counsel to NNA's counsel dated February 22, 2010, attached as Exhibit 4.
[19] *See* Affidavit of Jeffrey S. Patterson, attached as Exhibit 5.
[20] *See id.*

2. Defendant NNA's Answer to Plaintiff's Second Amended Complaint [Doc. No. 28];

3. NNA's First Amended Counterclaim [Doc. No. 29];

4. NNA's Designation of Expert Witnesses [Doc. No. 30];[21]

5. NNA's Motion to Exclude the Expert Opinions of Stephen Weaver [Doc. No. 42];

6. NNA's Motion for Summary Judgment [Doc No. 50];

7. NNA's Response to Plaintiff's Motion to Exclude Ryan Schooley and Strike His Report [Doc. No. 52];

8. NNA's Motion to Deposit Settlement Funds into Court Registry [Doc. No. 61];[22]

9. NNA's First Amended Motion for Summary Judgment [Doc. No. 63];

10. NNA's Motion for Leave to File Reply to Plaintiff's Response in Opposition to First Amended Motion for Summary Judgment [Doc. No. 73];

11. NNA's Reply to Plaintiff's Response to Its First Amended Motion for Summary Judgment and Brief in Support Thereof [Doc. No. 81];

12. NNA's Response to Plaintiff's Motion to Strike the Errata Sheet of NNA Expert Witness Ryan Schooley and Request for Costs [Doc. No. 82];

13. NNA's Response to Plaintiff's Motion to Strike New Summary Judgment Evidence and Brief in Support Thereof [Doc. No. 87];

14. NNA's Response to Plaintiff's Motion to Strike Impertinent and Scandalous Matter from NNA's Reply Brief and Brief in Support Thereof [Doc. No. 88];

15. NNA's Response to Plaintiff's Motion to Compel Warranty Manual and Seller's Parts and Accessories Manual [Doc. No. 94];

---

[21] The Court will note that Mr. Jeffrey S. Patterson, NNA's counsel, has been designated as an expert on NNA's attorneys' fees.

[22] The Court's Registry is currently holding $16,500.00 of settlement money, in which NNA claims an interest due to its counterclaim against Ms. Scarlott.

16. Defendant NNA's Motion for Rule 11 Sanctions [Doc. No. 101];[23]

17. NNA's Motion to Supplement the Court's Record (as it relates to NNA's Motion for Sanctions) [Doc. No. 106];

18. NNA's Response in Opposition to April Scarlott's Motion for Leave to File Supplemental Summary Judgment Evidence [Doc. No. 109];

19. NNA's Response to Plaintiff's Motion for Remand [Doc. No. 116].[24]

Not only did NNA file and respond to various pleadings with the Court, but NNA defended this case through the following depositions:

1. Two depositions of April Scarlott;

2. Bob Gore;

3. Frank Pierce;

4. Gogineni Srinivasa;

5. Neal Barnes;

6. Ryan Schooley (NNA's expert); and

7. Stephen Weaver (Ms. Scarlott's expert).[25]

Plaintiff's refusal to dismiss her frivolous action also required NNA to propound and respond to written discovery, attend hearings, draft and respond to correspondence, participate in telephone conferences, and attend to all other matters associated with defending a lawsuit.[26]

### D. *NNA Has Incurred over Two Hundred Thousand Dollars Defending this Litigation.*

Ms. Scarlott's Amended Petition prays for damages totaling $50,000.00. NNA incurred more than four times the amount in controversy to defend this suit due to the harassing and

---

[23] The Court has set for hearing NNA's Motion for Rule 11 Sanctions on October 10, 2013 [Doc. No. 121].
[24] *See* Affidavit of Jeffrey S. Patterson, attached as Exhibit 5.
[25] *See id.*
[26] *See id.*

unreasonable actions of Weisberg and Meyers, LLC. Specifically, as of August 31, 2013, NNA has incurred $180,210.00 in attorneys' fees.[27] It has also expended $8,196.59 in taxable court costs and an additional $12,702.22 in other expenses.[28] NNA prays this Court allow it to recover all fees and expenses.

### E. Weisberg and Meyers, LLC Makes it a Practice to Drive up Defense Costs to Force Settlements in Cases it Handles.

The present suit is not the only matter Noah Radbil, Aaron Radbil and the law firm of Weisberg and Meyers, LLC have unreasonably pursued. In fact, multiple courts around the country have admonished Weisberg and Meyers for its conduct, finding it to be "unreasonable" and "vexatious":[29]

- *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1307 (M.D. Fla. 2010) (noting "Plaintiff's counsel, an officer of the Court, filed a complaint wherein a majority of the allegations had ***no basis in fact and then failed to dismiss any of these allegations***, or requests for relief, until a summary judgment motion was filed.") (emphasis added).

- *Danielson-Holland v. Standley & Assocs.*, 512 Fed. Appx., 850, 853-54 (10th Cir. 2013) (". . . Mr. Ehrlich [of Weisberg & Meyers] objectively vexatiously and unreasonably multiplied the proceedings at [defendant's] expense.")

- *Brookter v. GC Servs. Ltd. P'ship*, 2011 U.S. Dist. LEXIS 44909, at *9 (S.D. Tex. Apr. 26, 2011) ("Moreover, the Court admonishes the plaintiff's attorney[s] [Noah Radbil and Aaron Radbil] that it will not permit such petty gamesmanship in the future.").

The attorneys at Weisberg and Meyers, LLC make it a practice to file and pursue baseless claims. As a result, defendants are forced to incur substantial fees and costs. NNA respectfully requests this Court prevent Weisberg and Meyers, LLC from continuing to employ these

---

[27] NNA can provide the Court with billing statements if the Court deems them necessary to its determination of fees and costs reasonably and necessarily incurred by NNA in this matter, but prefers to submit them for *in camera* review due to their reflection of counsel's work product.

[28] *See id*; Bill of Costs [Doc. No. 131], already on file herein.

[29] Judge Boyle is considering whether to sanction Noah Radbil and Weisberg & Meyers, LLC in a suit entitled *White v. Regional Adjustment Bureau, Inc.*, Civil No. 3:11-CV-1817-B, pending in the United States District Court for the Northern District of Texas, Dallas Division. The continuation of the hearing on the Motion for Sanctions is scheduled for October 9, 2013.

harassing tactics as a substitute for practicing law and order Weisberg and Meyers, LLC to reimburse NNA all of its fees and expenses incurred to date.

## III.
## NNA IS ENTITLED TO ITS FEES AND COSTS
## UNDER STATE AND FEDERAL LAW

### A. *The Court Has Made the Finding Necessary to Enter Judgment in Favor of NNA on Its Counterclaim and Thereby Award it Fees and Costs.*

Section 17.50(c) of the Texas Business and Commerce Code provides:

> <u>On a finding by the court</u> that an action under this section was <u>groundless in fact or law</u> or brought in bad faith, or brought for the purpose of harassment, the court ***shall*** award to the defendant reasonable and necessary attorneys' fees and costs.

TEX. BUS. & COM. CODE § 17.50(c) (emphasis added). Thus, Section 17.50(c) establishes four alternative grounds for the award of attorney's fees and court costs: (1) groundless in fact; (2) groundless in law; (3) brought in bad faith; or (4) brought for purposes of harassment. *Id.* A groundless action is one having no reasonable basis in law or fact and not warranted by a good faith argument for the extension, modification, or reversal of existing law. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989). The standard for determining whether a suit is groundless is "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser v. Myer,* 779 S.W.2d 806, 808 (Tex. 1989).[30]

---

[30] Courts view groundless suits and suits brought for purposes of harassment similarly. *See id.* at 638 ("It is difficult to conceive of a case which was not groundless but was brought for purposes of harassment."). Finally, a suit is brought in bad faith if it is motivated by a malicious or discriminatory purpose. *Schlager v. Clements*, 939 S.W.2d 183, 190 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Thus, in general, a trial court must consider the totality of the tendered evidence to determine if an arguable basis exists in fact and law for the consumer's claim. *See Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989).

The trial court's determination of whether a suit is groundless is a question of law. *See Donwerth*, 775 S.W.2d at 637 (confirming the trial court determines whether an action brought under the DTPA is groundless or brought in bad faith or for purposes of harassment).

In this case, the Court has reviewed NNA's Motion for Summary Judgment, Memorandum in Support, and accompanying evidence. The Court made specific findings regarding the merits, or lack thereof, of Ms. Scarlott's claims:

- Scarlott says that the car was defective because of the broken wiper, cup holder, and cargo-net. Nissan repaired these problems. A product is not defective simply because it requires repair.[31]

- Scarlott chose to alter the car, and only she is responsible for the consequences.[32]

- Nissan's payments and fixes demonstrate compliance with and performance beyond the express warranty - not liability.[33]

- The cause of the vehicle's defect was a mirror installed at Scarlott's demand by a third party after it left Nissan.[34]

- Nissan did not violate the Texas Deceptive Trade Practices Act because it did not breach the express or implied warranties. It also did not lie about the quality of repairs and services offered under the warranty. Scarlott even admits that she did not read the warranty that her lawyers said is deceptive.[35]

- [Scarlott] has sued the wrong company. Nissan Extended Services North America is the obligor [of the two maintenance agreements] – not Nissan North America. . . . Moreover, these contracts do not require Nissan to fix aftermarket parts, so it was not obliged to repair problems created by another company's mirror.[36]

- Scarlott voluntarily - after interrogation of her counsel by the court - abandoned her claims against Nissan North America for negligence, unjust enrichment, and promissory estoppel. *They are mentioned to*

---

[31] *See* Opinion on Summary Judgment [Doc. No. 119], already on file herein, at § 4(A).
[32] *Id.*.
[33] *Id.*
[34] *Id.* at § 4(B).
[35] *Id.* at §4(C).
[36] *Id.* at §4(D).

> *illustrate that she claimed eight legal theories against four parties <u>without legal or factual support</u>*.[37]

- ***<u>April Scarlott will take nothing from Nissan North America because her claims are not supported by facts or law</u>***.[38]

Ultimately, the Court made the required finding that ". . . [April Scarlott's] claims are not supported by facts or law." Therefore, pursuant to findings previously made by this Court and the Texas Business and Commerce Code section 17.50(c), NNA respectfully prays this Court award it reasonable and necessary attorneys' fees of $180,210.00 in fees and $8,196.59 in taxable court costs.

### B. Plaintiff's counsel and Weisberg and Meyers, LLC unreasonably and vexatiously multiplied the proceedings, entitling NNA to <u>all</u> of its fees, costs and expenses.[39]

#### 1. Counsel May be Personally Liable for Costs.

Federal law provides that a party's counsel may be personally liable for excessive costs. In particular, 28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case **unreasonably and vexatiously** may be required by the court to **satisfy personally** the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). To impose sanctions under this statute, the Court must find an attorney has multiplied the proceedings both "unreasonably" and "vexatiously." *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002); *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). Thus, the Court must make a separate determination on both the

---

[37] *Id*. at §4(E) (emphasis added).
[38] *Id*. at § 7 (emphasis added).
[39] Federal Rule of Civil Procedure 54(d)(2) provides further justification for awarding NNA its attorney's fees. *See* FED. R. CIV. P. 54(d)(2). Per that Rule, NNA can request its fees by motion specifying the grounds entitling it to the award and stating the amount sought, so long as its motion is filed no later than 14 days after the entry of judgment. *Id.* In this case, NNA is entitled to fees under the Court's directive and Section 17.50(c) of the Texas Business and Commerce Code.

issue of the reasonableness of the claims and the purpose for which suit was instituted. *Calhoun*, 34 F.3d at 1300 (citing *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994)). Sanctions under 28 U.S.C. § 1927 also require "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010) (quoting *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002)).

A determination of bad faith, satisfying the "unreasonable" prong, is proper where an attorney knowingly or recklessly pursues a frivolous claim. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993); *Manax v. McNamara*, 842 F.2d 808, 814 (5th Cir. 1988). An improper motive, which satisfies the "vexatious" prong, does not necessarily refer to bad faith or intent to harass. *Ratliff v. Stewart*, 508 F. 3d 225, 235 n. 13 (5th Cir. 2007). Vexation implies something broader than that. *Id.*

To "vex" is defined, among others things, as "to bring trouble or distress to," "to subject to mental suffering," or "to irritate or annoy," as well as "to tease or torment." *Id.* (quoting Webster's Third New International Dictionary of the English Language 2548 (1981)). Consistent with this, the Fifth Circuit has held an "improper purpose" is not only shown through bad faith. *Ratliff*, 508 F.3d at 235 n. 13. "Indeed, any 'reckless disregard of the duty owed to the court' can suffice." *Id.* (citing *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)).

When an attorney's conduct is so obviously unreasonable that a court can infer an "improper purpose" from the fact that the attorney persisted in it, it is unnecessary for the court to explain at length why the vexatiousness prong has been met. *Ratliff v. Stewart*, 508 F. 3d 225, 234 (5th Cir. 2007). "Like a sliding scale, the degree and extent to which a specific explanation must be contained in the record will vary accordingly with the particular circumstances of the

case, including the severity of the violation, the significance of the sanctions, and the effect of the award." *Id.* (quoting *Thomas v. Capital Security Services*, 836 F.2d 866, 883 (5th Cir. 1988) (en banc)).

Fees and costs associated with "the persistent prosecution of a meritless claim" may be awarded. *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). However, **<u>when the entire course of proceedings were unwarranted and should neither have commenced nor persisted, an award under § 1927 may shift the entire financial burden of an action's defense</u>**. *Id*; *Procter & Gamble*, 280 F.3d at 526; *see also Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (acknowledging imposition of sanctions under Section 1927 requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.").

### 2. **Weisberg and Meyers, LLC Repeatedly Refused to Dismiss the Suit Despite Overwhelming Evidence NNA was Not Liable.**

In this case, NNA informed Ms. Scarlott's counsel from the outset that the aftermarket review mirror, which NNA neither installed nor warranted, caused the Murano's electrical problems, and such was not covered under NNA's new vehicle, limited warranty.[40] Plaintiff's counsel took an unreasonable position, refusing to nonsuit the claims. Ms. Scarlott's attorneys blamed the dealer and therefore, without any legal or factual basis, purportedly attempted to impute liability to NNA:

> We will not be non-suiting the case. What is of interest to me why did it take the dealer until the 6th to 7th visit to discover the alleged aftermarket issue (particularly if they had the part installed)?[41]

NNA gave Ms. Scarlott's counsel another opportunity to non-suit, explaining Plaintiff's theory of liability does not relate to any alleged wrongdoing by NNA.[42] Plaintiff's counsel

---

[40] *See* Exhibit 1.
[41] *See* Exhibit 4.
[42] *See* correspondence from NNA to Plaintiff's counsel dated March 2, 2010, attached as Exhibit 6.

persisted, however, in their frivolous prosecution of the case, sending the clear message: regardless of the merits of any of the dozens of cases we file around the country, you will pay us or pay far more to defend.

In May 2010, NNA provided Plaintiff's counsel *sworn testimony* substantiating the aftermarket mirror caused the Murano's electrical problems and NNA had no involvement in design, manufacture, or installation of the aftermarket accessory.[43] NNA did not warrant the part or the installation workmanship.[44] Charged with this evidence, NNA sent Ms. Scarlott and her counsel a settlement letter, requesting Ms. Scarlott dismiss her suit and pay NNA reasonable attorneys' fees.[45] Ms. Scarlott declined.

Suit continued for another three years. Numerous depositions were taken and an exhaustive number of motions, pleadings, and discovery were drafted, filed and served. Despite having no evidence to substantiate her claims, Ms. Scarlott and her counsel persisted. In fact, Weisberg and Meyers, LLC sent NNA an offer of settlement in April 2011, demanding $40,000.00 from it.[46] NNA refused Plaintiff's unreasonable demand and was forced to continue defending itself against Plaintiff's frivolous suit.

In this Court's own words, however, "[NNA] . . . ***exhaustively showed*** [Ms. Scarlott's] problems were caused by Hurricane's installation."[47] Plaintiff's counsel never dismissed Plaintiff's claims against NNA on their own accord, despite overwhelming evidence as to their baseless nature. Instead, Plaintiff's counsel's blatant disregard for the law and the facts forced

---

[43] *See generally* excerpts of Gore Depo., attached as Exhibit 2.
[44] *Id*.
[45] *See* correspondence from NNA to Plaintiff's counsel dated May 5, 2010, attached as Exhibit 7.
[46] *See* electronic correspondence from Plaintiff's counsel to NNA dated April 13, 2011, attached as Exhibit 8.
[47] *See* Opinion on Summary Judgment [Doc. No. 119], already on file herein, at § 4(A).

**DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION FOR
AMENDED JUDGMENT AND FOR FEES AND COSTS**                                                                                                        **PAGE 14**

NNA to spend hundreds of thousands of dollars defending its interests. It also required this Court's involvement to persuade Ms. Scarlott and her counsel in dismiss four of her eight claims.

> Scarlott voluntarily - *after interrogation of her counsel by the court* - abandoned her claims against Nissan North America for negligence, unjust enrichment, and promissory estoppel. They are mentioned to illustrate that she claimed eight legal theories against four parties *without legal or factual support.*[48]

With full knowledge Ms. Scarlott's claims lacked any factual and legal basis from the inception of suit, Weisberg and Meyers, LLC pursued a long and expensive journey, attempting to concoct evidence of liability where none existed. Noah Radbil, Aaron Radbil and Weisberg and Meyers, LLC should be personally responsible for excessive fees and costs NNA has incurred in defending this frivolous and groundless lawsuit. NNA prays this Court find Noah Radbil, Aaron Radbil and Weisberg and Meyers, LLC acted to multiply the proceedings in this case unreasonably and vexatiously, and award NNA $201,108.81 in fees and expenses.

### 3. Other Courts have found Weisberg and Meyers, LLC have Improperly Prosecuted Groundless Claims.

The conduct of Noah Radbil, Aaron Radbil, and Weisberg and Meyers, LLC in this case is consistent with a pattern of conduct these lawyers display in cases around the country. Weisberg and Meyers, LLC inflate defendants' costs and fees by filing and persisting in baseless lawsuits. For example, in finding Weisberg and Meyers, LLC liable for a defendant's costs and fees in a case regarding debt collection practices, a federal judge in the United States District Court for the Middle District of Florida made the following observations:

> Here, **the Court finds that Plaintiff and *his attorney multiplied the proceedings in this case unreasonably and vexatiously* and exhibited a *deliberate indifference to obvious facts*.** Indeed, Plaintiff verified a claim with multiple allegations that contradicted his own deposition testimony.

---
[48] *Id*. at § 4(E).

**DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION FOR
AMENDED JUDGMENT AND FOR FEES AND COSTS**     **PAGE 15**

> *Further, when it became apparent that discoverable evidence would not bear out the majority of the Complaint's claims, Plaintiff and his attorney failed in their duty to discontinue their quest* . . .
>
> Even more troubling, ***Plaintiff's counsel [Aaron Radbil], an officer of the Court, filed a complaint wherein a majority of the allegations had no basis in fact and then failed to dismiss any of these allegations***, or requests for relief, until a summary judgment motion was filed.

*Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1307 (M.D. Fla. 2010) (emphasis added).

The United States Court of Appeals for the Tenth Circuit recently affirmed a district court's finding that Weisberg and Meyers, LLC took another groundless case alleging unfair debt collection practices to trial:

> Mr. Ehrlich [of Weisberg & Meyers] should have realized upon careful continual re-evaluation of the claim as he prepared for trial that he lacked evidence . . . supporting [plaintiff's] assertion and testimony . . . Mr. Ehrlich therefore either failed to properly prepare for trial or the evidence did not exist . . . **In either case, he proceeded to trial when he should have known there was no basis to proceed.** In addition, during trial, the district court noted that Mr. Ehrlich was pursuing the smallest claim after all other claims had been dismissed and that the court did not know why he was pursuing it. **Based on these facts, Mr. Ehrlich objectively vexatiously and unreasonably multiplied the proceedings at [defendant's] expense.**

*Danielson-Holland v. Standley & Assocs.*, 512 Fed. Appx., 850, 853-54 (10th Cir. 2013).

Noah Radbil and Aaron Radbil, attorneys at Weisberg and Meyers, LLC, have been admonished by federal courts for their "gamesmanship" and baseless continued pursuit of cases. *See, e.g.*, *Brookter v. GC Servs. Ltd. P'ship*, 2011 U.S. Dist. LEXIS 44909, at *9 (S.D. Tex. Apr. 26, 2011) ("Moreover, the Court admonishes the plaintiff's attorney[s] [Noah Radbil and Aaron Radbil] that it will not permit such petty gamesmanship in the future. Once the defendants

offered the plaintiff a full and complete recovery, she had nothing further to gain from continued litigation.").[49]

---

[49] Not only has Weisberg and Meyers, LLC vexatiously and unreasonably multiplied numerous proceedings, including this one, to cause defendants to incur excessive costs and fees, but the firm also makes it a practice to "over-bill" on their cases to ratchet up its own claim for attorneys' fees:

- A federal court in Florida noted Weisberg & Meyers' excessive use of attorneys and staff by stating "Plaintiff utilized the services of *FIFTEEN* professionals, including six attorneys, three law clerks, two paralegals, and four legal assistants[.]" *Raimondi v. Zakheim & Lavrar, PA*, Case No. 6:11-cv-480-Orl-31-DAB (M.D. Fla. Apr. 5, 2012), (courtesy copy attached hereto as Exhibit 9). The *Raimondi* court went on to state "What Plaintiff failed to submit is evidence sufficient to convince the Court that well over ten professionals were necessary to prosecute this straightforward debt collection act suit." *Id*. Ultimately, the magistrate found "**the number of professionals used here necessarily inflated the bill, as timekeepers moved in and out of the file, and resulted in a fee claim that cannot be sustained**." *Id*. (emphasis added). Ultimately, the court struck Weisberg & Meyers' request for attorneys' fees in half. *Id*.

- In *Castro v. McCarthy & Jennerich*, the court stated "[p]laintiff's Counsel billed the services of thirteen attorneys and support staff to this routine file." *Castro v. McCarthy & Jennerich*, Civil Action No. 2:11-cv-01832-CCC-JAD (D.N.J. Jan. 10, 2013), (courtesy copy attached hereto as Exhibit 10). "'[E]nlisting more associates' work on a case in order to dribble the ball more efficaciously down the field is acceptable only when the end goal the firm shoots for is the vindication of Plaintiff's rights under the FDCPA—not the maximization of its own fee award**.'" *Id*. (emphasis added) (citation omitted). In assessing the reasonableness of hours, the court stated "[t]his Court likewise finds this to be an unreasonable number of hours in light of the amount of work performed and the relative legal simplicity of this case." *Id*.

- Another federal court found "that it was unreasonable to have seven (7) attorneys, including two senior partners, billing time in this case, which the Magistrate Judge accurately described as a 'routine FDCPA litigation' that never progressed beyond the initial stages." *Whitt v. Receivables Performance Mgmt, LLC*, No. 11-06750-JAP (D.N.J. Oct. 2, 2012) (courtesy copy attached hereto as Exhibit 11) (citation omitted). "For example, Mr. Meyers – a senior partner at the firm – billed time for performing tasks such as opening a file, entering client information into a database and preparing an amicus precedent to track litigation progress and status. These tasks are clerical in nature and may not be included in Plaintiff's fee award. Thus, it was not only correct but necessary for Magistrate Judge Arpert to recommend that Plaintiff's request for attorneys' fees be reduced." *Id*. (citations omitted).

It is clear from Weisberg and Meyers' fee agreement that it expects defendants to pay for its inflated legal fees:

> 11. There are only three (3) ways that client can be required to pay attorneys fees to Weisberg and Meyers or anything more than the amounts stated above: (1) if client terminates attorney's services or otherwise fails to cooperate with the prosecution of client's case after this agreement is signed; (2) if client enters any agreement whatsoever with the Defendant that does not require the defendant to pay in full the Attorney's Fees and Costs incurred by Weisberg & Meyers in its representation of Client, without the prior written consent of Weisberg & Meyers for Client to enter into such an agreement; or (3) if client has made or does make in the future any material misrepresentations of fact about the case. These events constitute a breach of this attorney/client agreement and will force Weisberg and Meyers to seek clients attorneys' fees

NNA, therefore, prays this Court find the conduct of the attorneys of Weisberg and Meyers, including Noah Radbil and Aaron Radbil, vexatiously and unreasonably multiplied these proceedings at NNA's expense, and thereby award NNA all of its costs and fees incurred in defending this matter.

### 4. The Court may use its Inherent Power to award NNA Fees, Costs and Expenses.

Federal courts also have inherent power to sanction bad faith conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001), *quoting Carroll v. The Jacques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997). "Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution." *Id., quoting Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Manufacturing Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995), *quoting Chambers*, 111 S.Ct. at 2133. Thus, to the extent this Court does not believe NNA is entitled to its fees, expenses and costs from Plaintiff's counsel under other applicable law, NNA prays this Court exercise its inherent power to award NNA its fees, expenses and costs incurred in defending this baseless lawsuit that spun out of control as a result of Plaintiff's counsel's conduct, which, in this case, is

---

and costs directly from client as opposed to seeking them on client's behalf from the Defendant.

*See* sample fee agreement of Weisberg and Meyers, LLC, attached hereto as Exhibit 12.

particularly deplorable. Indeed, Plaintiff's counsel and their firm have repeatedly "defiled" the "temple of justice" in this case and others, and will likely continue to make a mockery of the justice system until they are stopped completely.

### 5. NNA is Entitled to Taxable Court Costs.

The Federal Rules of Civil Procedure provide: "Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party . . . ." FED. R. CIV. P. 54(d)(1). Statutes define taxable costs to include fees of the clerk, fees for transcripts, and fees for copies necessarily obtained for use in the case. *See* 28 U.S.C. § 1920. Accordingly, federal law also entitles NNA to recover its taxable court costs of $8,233.42.[50]

WHEREFORE, PREMISES CONSIDERED Defendant Nissan North America, Inc. respectfully requests this Court grant its Motion for Amended Judgment; amend the Final Judgment to award NNA its costs and expenses necessarily incurred in defending Plaintiff's frivolous claims against Ms. Scarlott and Noah Radbil, Aaron Radbil and Weisberg and Meyers, LLC personally; and for such other and further relief, both at law and in equity, to which Defendant Nissan North America, Inc. may be entitled.

---

[50] *See* Exhibit 5, and Bill of Costs [Doc. No. 131], already on file herein.

Respectfully submitted,

*/s/ Jeffrey S. Patterson*
**JEFFREY S. PATTERSON (Lead Counsel)**
State Bar No. 15596700
So. District Bar No. 12446
**GIOVANNA TARANTINO BINGHAM**
Texas State Bar No. 24042613
So. District Bar No. 568188
**HARTLINE DACUS BARGER DREYER LLP**
6688 North Central Expressway, Suite 1000
Dallas, TX 75206
(214) 369-2100
(214) 369-2118

**ATTORNEYS FOR DEFENDANT
NISSAN NORTH AMERICA, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM-ECF system on the 27th day of September 2013.

*/s/ Jeffrey S. Patterson*

## CERTIFICATE OF CONFERENCE

Counsel for Defendant Nissan North America, Inc. has contacted counsel for Plaintiff to confer regarding the merits of this Motion. Plaintiff and her counsel oppose the relief sought herein. Therefore, Defendant Nissan North America, Inc. seeks the Court's intervention.

*/s/ Jeffrey S. Patterson*