IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Courts
Southern District of Texas
FILED
DEC 05 2014
David J. Bradley, Clerk of Court

No. 13-20528

United States Court of Appeals
Fifth Circuit
FILED
November 10, 2014
Lyle W. Cayce
Clerk

APRIL SCARLOTT,

Plaintiff - Appellant

WEISBERG & MEYERS, L.L.C.; NOAH D. RADBIL,

Appellants

v.

NISSAN NORTH AMERICA, INCORPORATED; HURRICANE GLASS; HURRICANE AUTO CARE & ACCESSORIES, INCORPORATED,

Defendants - Appellees

Appeals from the United States District Court
for the Southern District of Texas

ON PETITION FOR REHEARING

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

IT IS ORDERED that the petition for panel rehearing is GRANTED and the opinion previously filed in this case is WITHDRAWN. The following opinion is substituted therefore:

Plaintiff-Appellant April Scarlott and Appellants Weisberg & Meyers, L.L.C. and Noah Radbil appeal the district court's denial of Scarlott's motion to remand, grant of summary judgment in favor of Defendants-Appellees

Nissan North American, Incorporated ("Nissan") and Hurricane Auto Care & Accessories, Incorporated ("Hurricane"),[1] as well as the district court's final judgment and various management orders. Appellants contend that the district court lacked subject matter jurisdiction over this case. For the reasons below, we REVERSE and REMAND for proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS

In December 2006, Scarlott purchased a 2006 Murano from a Nissan dealership for $31,881, totaling $39,289 including all financing fees, warranties, taxes, and costs. For safety reasons, Scarlott wanted to purchase a car that had a HomeLink system built into the mirror, which would allow her to sync her car with her home lights, alarm system, and garage door. The salesman at the dealership assured Scarlott that the car she purchased had a HomeLink mirror; however, when she attempted to program the mirror that night, she realized that the car did not have the necessary system. The day after she purchased the car, she went back to the dealership intending to return the car. Instead, she agreed to bring the car to a local factory-authorized installation center to have the HomeLink system and mirror installed. The dealership arranged for Hurricane to perform this installation and gave Scarlott a voucher so that she would not have to pay for it.

Nine months later, in September 2007, the car began experiencing electrical problems, including difficulty starting. Scarlott took the car to the dealership, which replaced the car's battery. The car continued to experience

---

[1] In Scarlott's first amended complaint, she named "Hurricane Glass" as a defendant. Scarlott later filed a second amended complaint correctly identifying "Hurricane Auto Care & Accessories, Inc." as the proper defendant. Only Hurricane Auto Care & Accessories, Inc. has been served and joined in this lawsuit. However, throughout the record, parties and witnesses frequently refer to "Hurricane Glass." For the purposes of this opinion, we will refer to both entities as "Hurricane."

intermittent electrical problems over the next two years, requiring Scarlott to take her car to the dealership on seven occasions. The dealership replaced the battery four times. In November 2009, the dealership monitored the car for almost thirty days and then diagnosed the electrical problems as being caused by the improper installation of the HomeLink mirror. The dealership contacted Hurricane, and Hurricane agreed to fix the problem.

On October 19, 2009, Scarlott filed suit in Texas state court against Nissan for breach of express warranty, breach of implied warranty, and violation of the Texas Deceptive Trade Practices Act. Scarlott later amended her complaint to add claims against the dealership, a Nissan distributor, and Hurricane. On December 6, 2010, the defendants removed the suit to federal court based on federal question and supplemental jurisdiction. The defendants asserted federal question jurisdiction under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"), which allows litigants to bring breach-of-warranty claims in federal court if the amount in controversy is at least $50,000. *See* 15 U.S.C. § 2310(d)(3)(B).

Three months after removal, Scarlott raised the issue of subject matter jurisdiction at a conference with the district court, expressing concern that the amount in controversy did not meet the $50,000 threshold required by the MMWA. The district court indicated that it would be disinclined to dismiss the case for want of jurisdiction.

Scarlott subsequently dismissed her claims against the dealership and distributor, leaving only her claims against Nissan and Hurricane. On May 9, 2013, after the remaining parties had briefed a motion for summary judgment, Scarlott filed a motion to remand the suit to state court for lack of subject matter jurisdiction. Nissan and Hurricane opposed the remand. On August 28, 2013, the district court issued an order denying Scarlott's motion to remand, excluding Scarlott's expert report, and granting summary judgment

in favor of Nissan and Hurricane. Scarlott timely appealed. On appeal, Scarlott raises several issues. Because we find that the district court erred in its decision not to remand the case to state court, we will only address the jurisdictional issue.

## STANDARD

"Federal courts are courts of limited jurisdiction 'hav[ing] only the authority endowed by the Constitution and that conferred by Congress.'" *United States v. Hazlewood*, 526 F.3d 862, 864 (5th Cir. 2008) (alteration in original) (quoting *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." *Id.* "In reviewing a district court's denial of a plaintiff's motion to remand a case from federal court to state court, the Court of Appeals applies a de novo standard of review." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1117 (5th Cir. 1998).

## DISCUSSION

### I. The Magnuson-Moss Warranty Act

The MMWA grants federal courts jurisdiction to hear claims for breach of express and implied warranty with the following limitation:

> No claim shall be cognizable in a suit brought [in federal court]. . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit . . . .

15 U.S.C. § 2310(d)(3). Accordingly, federal question jurisdiction under the MMWA is limited to breach-of-warranty claims for which the amount in controversy is at least $50,000.

4

Generally, courts look to state law to determine the applicable measure of damages, which informs the amount in controversy under the MMWA. *See Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984) (applying Texas law); *see also MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979) ("[T]he legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act."). This court, however, has recognized several limitations in calculating the amount in controversy under the MMWA. First, personal injury damages for breach of warranty, which are not recoverable under the MMWA, may not be counted to satisfy the jurisdictional amount. *Boelens*, 748 at 1069. Second, attorneys fees may not be used to satisfy the jurisdictional amount, because the MMWA requires that the amount in controversy be calculated "exclusive of interests and costs." *Id.*; *see also Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) ("Nor may attorneys fees be considered in calculating the jurisdictional amount."). Last, damages for any pendent state-law claims should not be included to satisfy the jurisdictional amount. *Boelens*, 748 F.2d at 1071 n.19. With those limitations in mind, we now look to the substantive law governing Scarlott's breach-of-warranty claims to guide our calculation of the amount in controversy.

## II. Damages for Breach of Warranty under Texas Law

In the present case, the parties agree that Texas law applies to Scarlott's breach-of-warranty claims. Texas law allows recovery for the diminished value of the good caused by the breach of warranty. In particular, Texas law states: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Tex. Bus. & Com. Code Ann. § 2.714(b). Texas law additionally allows recovery of

5

"incidental and consequential damages." §§ 2.714(c), 2.715; *see also Boelens*, 748 F.2d at 1069 (calculating damages for the lost investment in a mobile home plus the additional costs of alternative housing up to the time of trial). Texas law does not, however, allow for punitive damages for breach-of-warranty claims. *Boelens*, 748 F.2d at 1070-71. Accordingly, under Texas law, the amount in controversy for Scarlott's breach-of-warranty claims equals the diminished value of the car plus incidental and consequential damages.

### III. Scarlott's Complaint and the Amount in Controversy

The standard for determining the amount in controversy depends on whether Scarlott demanded a specific amount of damages in her complaint. If Scarlott did demand a specific amount, "[t]he amount stated in the complaint is itself dispositive of jurisdiction if the claim is apparently made in good faith." *Id.* at 1069. If Scarlott did not demand a specific amount, the removing defendant has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. *See De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) ("When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [the jurisdictional requirement]."). There are two ways that this burden can be met. "First, a court can determine that removal was proper if it is facially apparent that the claims are likely above [the jurisdictional amount]." *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Second, "[i]f it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

*a. Scarlott did not allege a specific amount of damages*

Contrary to the district court's reasoning, Scarlott did not demand a specific amount of damages in her complaint. The first paragraph of Scarlott's first amended petition[2] states:

### Discovery Control Plan

> 1. Plaintiff intends that discovery in this case shall be conducted under Level One as set forth in Tex. R. Civ. P. Rule 190.1. This suit involves only monetary relief totaling $50,000 or less, excluding court costs, prejudgment interest and attorney's fees.

This statement complies with Texas Rule of Civil Procedure 190.1, which requires a plaintiff to select a discovery plan in the first paragraph of his or her complaint. Tex. R. Civ. P. 190.1 ("A plaintiff must allege in the first numbered paragraph of the original petition whether discovery is intended to be conducted under Level 1, 2, or 3 of this Rule."). The "Level 1" discovery plan, which Scarlott selected, is available for certain "[e]xpedited [a]ctions and [d]ivorces [i]nvolving $50,000 or [l]ess." Tex. R. Civ. P. 190.2. Consistent with Rule 190.1, the leading paragraph of Scarlott's complaint served to select the Level 1 discovery control plan, and her reference to "$50,000 or less" was included to recite the terms of that discovery plan. Scarlott did not plead a specific amount of damages in the first paragraph, or any subsequent paragraph, of her complaint.

### b. *Damages of $50,000 are not "facially apparent."*

Examining the rest of the complaint, it is not "facially apparent" that Scarlott's breach-of-warranty claims meet the $50,000 threshold. Scarlott

---

[2] Scarlott's original complaint contained an almost identical first paragraph. However, because Scarlott amended her complaint before it was removed to federal court, we will examine her amended complaint for the purposes of evaluating federal jurisdiction. *See Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) ("It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed." (quoting *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 157 (5th Cir. 1982))).

7

requested damages for the diminished value of her car due to the defects. In her complaint, she alleged that the total purchase price for her car was $39,289, including all financing fees, warranties, and other costs. The complaint does not allege the value of Scarlott's car in its defective condition, and thus does not give a basis for estimating the car's diminished value. Scarlott also requested incidental and consequential damages. The complaint reflected that she had to take her car to the dealership for repairs on several occasions. Although it is reasonable to infer that she incurred some incidental costs, such as costs for alternative transportation while her car was in the shop, the face of the complaint gives no indication of how much these damages equaled. Therefore, it is not facially apparent that her total damages—the diminished value of her car, which cost less than $39,289, plus the cost she incurred associated with the repair efforts—meet the $50,000 threshold.

*c. Defendants have not met their burden*

Nissan and Hurricane have not met their burden of establishing, by a preponderance of the evidence, that Scarlott's damages amount to $50,000 or more. Neither Nissan nor Hurricane supplied any evidence, or even an allegation, as to the value of the car in its defective condition.[3] *See Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 884 (6th Cir. 2005) ("[T]he party asserting federal jurisdiction must allege the . . . value of the allegedly defective vehicle . . . ." (quoting *Samuel-Bassett*, 357 F.3d at 402)). While the purchase price, which was $31,881 for the car itself, provides evidence of what the car was worth as warranted, there is no evidence that allows us to determine the

---

[3] While a court can rely on expert testimony to determine the value of an allegedly defective vehicle, *Messana v. Mercedes-Benz of N. Am., Inc.*, 5 F. App'x 522, 524 (7th Cir. 2001), neither Nissan nor Hurricane presented expert evidence regarding the car's value. Scarlott did put forth an expert, Stephen Weaver, who estimated that the value of the car in its defective condition was $23,910. The resulting figure for diminished value, $7,970, is a far cry from $50,000. The district court, however, excluded Weaver's expert report on Nissan and Hurricane's motion as unreliable under Federal Rule of Evidence 702 and *Daubert*.

8

diminished value of the car, which is the core of Scarlott's requested damages. Without evidence as to the diminished value of the car, the court is unable to determine the amount in controversy. *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521-22 (7th Cir. 2003) ("Unfortunately, no party has provided us with the relevant numbers to plug into the [] formula, and we are thus in no position to conclude that jurisdiction under § 2301(d)(1)(B) existed over the Magnuson-Moss claims."); *Diamond v. Porsche Cars N. Am., Inc.*, 70 F. App'x 893, 895 (7th Cir. 2003) ("[W]e cannot possibly determine whether the amount in controversy has been met without knowing the value of the car with the alleged defects.").

Even if we were to assume that the car was worthless with the defect—a counter-factual assumption in light of Scarlott's continued use of the vehicle with the defect—Nissan and Hurricane still have not met their burden of proving that her damages meet the $50,000 threshold. Nissan and Hurricane submitted some evidence as to incidental and consequential damages. Specifically, they claim that Scarlott had to pay $1,600 for rental cars, $225 for a wrecker service, $1,700 for repairs, and $120 for a battery charger. Adding these values to the full purchase price, even including all financing charges, warranties, and costs, results in a maximum damages calculation of $42,934, still below the $50,000 threshold.

Nissan and Hurricane contend that Scarlott's damages could exceed the $50,000 threshold if she recovers damages for lost profits in her real estate job due to car troubles. Texas law does allow for recovery of foreseeable lost profits where the lost profits are "reasonably certain," rather than speculative. *See Tex. Instruments, Inc. v. Teletron Energy Mgmt. Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). Nissan's and Hurricane's attempt to put lost profits "in controversy" fails for two reasons. First, Nissan and Hurricane did not produce any evidence that Scarlott is seeking damages for lost profits in this suit. Scarlott

9

did not allege that she lost any profits, nor does she request damages for lost profits in her complaint. In fact, Scarlott's complaint is devoid of reference to her job. Second, even if Scarlott were seeking damages for lost profits, such damages would be speculative and Nissan and Hurricane fail to provide a realistic estimate as to their amount. Nissan and Hurricane point to Scarlott's deposition testimony to support their lost-profits theory, yet, contrary to their assertion, Scarlott did not testify that she lost any clients or sales. When asked if she lost any clients, Scarlott responded that she did not know, stating: "You would have to ask them. . . . Some buyers flake, some buyers don't. You know, it's not always – it's not like every time you show a client a house, they buy from you." Nissan and Hurricane cannot identify a hypothetical source of recovery that Scarlott does not seek, inconsistent with the facts of the case, in order to raise the amount in controversy above the jurisdictional requirement. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) ("The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds $50,000." (footnote omitted)).

## CONCLUSION

For the foregoing reasons, the district court erred by denying Scarlott's motion to remand. Consequently, we REVERSE the order granting summary judgment in favor of Nissan and Hurricane and denying the motion to remand. We REMAND the case to the district court with instructions to remand the case to state court. In light of our holding that the district court did not have jurisdiction over this case, the district court should reconsider whether to award attorneys' fees and costs to the defendants; and if the court decides that attorneys' fees and costs are still appropriate, the court should reconsider the amount of the award. *See Hernandez v. Conriv Realty Associates*, 116 F.3d 35,

41 (2nd Cir. 1997).[4] Consequently we VACATE the district court's attorneys' fees and costs order and REMAND that matter for further proceedings.

---

[4] The panel takes no position at this time on the question of whether the attorneys' fees and costs order can stand despite the district court's lack of jurisdiction. Instead, we give the district court an opportunity to reevaluate its attorneys' fees and costs order in light of our holding that it did not have jurisdiction over the lawsuit. Any future award by the district court will be subject to appellate review and, as the dissent points out, will be reviewed under an abuse of discretion standard.

GRAVES, Circuit Judge, dissenting in part:

I disagree with the majority inasmuch as it remands the issue of attorneys' fees and costs to the district court for reconsideration. Because I would vacate the district court's order awarding attorneys' fees and costs without remanding to the district court for reconsideration, I respectfully dissent in part.

*Hernandez v. Conriv Realty Associates*, 116 F.3d 35, 41 (2nd Cir. 1997), although cited by the majority, supports the conclusion that this case should not be remanded for reconsideration of attorneys' fees and costs. In *Hernandez*, after the defendant removed the case from state court to federal court, the plaintiff committed various procedural violations, including failing to appear as ordered to a follow-up conference. As sanctions, the district court dismissed the plaintiff's claims and ordered the plaintiff to pay attorneys' fees "directly related to the January 17, 1996 conference" at which the plaintiff failed to appear as ordered. *Hernandez v. Conriv Realty Assocs.*, 1996 WL 97199 (S.D.N.Y. March 6, 1996). The fees directly related to the missed conference were determined to be $627.75. *Hernandez*, 1996 WL 271783 (S.D.N.Y. May 22, 1996); and 1996 WL 345876 (S.D.N.Y. June 21, 1996).

On appeal, the Second Circuit concluded that there was no federal jurisdiction, vacated the judgment and remanded the case. The court also concluded that the district court should reconsider whether to impose sanctions "because a district court can validly impose sanctions for procedural violations even though it lacks jurisdiction over the case." *Hernandez*, 116 F.3d at 37.[1] The court based its conclusion on Supreme Court precedent, saying, in relevant part:

---

[1] I note that, on remand, the district court vacated the imposition of sanctions in the amount of $627.75. *Hernandez*, 1998 WL 63467 (S.D.N.Y. Feb. 17, 1998). The district court

12

> Here, the district court ordered Hernandez to pay Conriv's attorney's fees related to the pretrial conference which Hernandez missed. Such an order is a procedural sanction that "does not signify [the] district court's assessment of the legal merits of" Hernandez's claims, [*Willy v. Coastal Corp.*, 503 U.S. 131, 138, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992),] and therefore, the order creates no constitutional concerns.

*Id.* 116 F.3d at 41. The court then analyzed whether the orders were proper under the Federal Rules of Civil Procedure before determining that remand was appropriate.

In *Willy*, the district court granted Rule 11 sanctions for sanctionable conduct unrelated to the petitioner's effort to establish that the district court did not have subject matter jurisdiction. The amount of sanctions was the amount of attorneys' fees ($19,307) that the respondents had incurred in responding to the petitioner's sanctionable conduct. *Willy*, 915 F.2d 965 (5th Cir. 1990).

Here, there were no such procedural violations. The attorneys' fees and costs directly resulted from the district court's assessment of the legal merits of Scarlott's claims and represented the total billable case hours of 1,065 hours over four years by Nissan and the total fees incurred by Hurricane.[2] Also, the procedural posture here was on summary judgment, not on dismissal for failure to state a claim. The district court not only decided the merits of the case on summary judgment, but the transcript of the hearing on the motion for sanctions is replete with commentary on the legal merits of the case. Thus, there is no basis for remanding this issue to the district court for

---

also took further action addressing the dismissal that was subsequently vacated on appeal. *Hernandez*, 182 F.3d 121 (2nd Cir. 1999).

[2] The district court declined to order additional costs in the total requested by Nissan, saying "Nissan North America will recover $180,000 in attorney's fees and costs because I don't want to audit the costs." Hurricane received the total it requested of $15,765.50 plus an additional $500 for the hearing on sanctions.

13

reconsideration and the order should simply be vacated. *Choo v. Exxon Corp.*, 764 F.2d 1148, 1153 n.4 (5th Cir. 1985).

In *Hernandez*, after determining that the award did not signify the district court's assessment of the merits of the case, the court said: "Although we have concluded that the district court's orders created no constitutional concerns, we must nevertheless determine whether the orders were proper" before concluding the district court should reconsider in light of the lack of jurisdiction. *Hernandez*, 116 F.3d at 41. That was not done by the majority here.

Unlike *Willy*, this case did not involve Rule 11 sanctions. Here, the district court ordered the attorneys' fees and costs under 28 U.S.C. § 1927, which says:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

With regard to section 1927, this court has said:

> Punishment under this statute is sparingly applied, and except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may not shift the entire financial burden of an action's defense. We therefore require a detailed finding that the proceedings were both unreasonable and vexatious.

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996). (Internal citation and marks omitted).

Sanctions under section 1927 are reviewed under the abuse of discretion standard. *See Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). "We

14

have characterized awards under § 1927 as penal in nature. Strict construction of this statute is necessary so that the legitimate zeal of an attorney is representing her client is not dampened." *Id.* (Internal citations omitted). Section 1927 permits awards only against attorneys or others admitted to conduct cases and does not permit the court to sanction a party. *Id.* Further, section 1927 allows the award of only excess costs. *Id.* As this court said in *Browning*:

> Under the "American rule," each party must bear its own expenses during litigation. Attorneys' fees are not ordinarily recoverable by the prevailing litigant in the absence of statutory authorization. By its terms this statute does not authorize the wholesale reimbursement of a party for all of its attorneys' fees or for the total cost of the litigation. Under § 1927, only those fees and costs associated with "the persistent prosecution of a meritless claim" may be awarded. Except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under § 1927 may not shift the entire financial burden of an action's defense.

*Browning*, 931 F.2d at 344-45. (Internal citations omitted).

By its very nature, section 1927 involves assessing the merits of the claim, which establishes the inappropriateness of the district court's order in light of the lack of jurisdiction. However, even looking beyond the nature of section 1927, the record in this matter does not support the award of attorneys' fees and costs.

As an initial matter, the district court not only ordered Scarlott's counsel liable for fees and costs jointly and severally, but also found Scarlott liable for the amount of money held in the registry of the court for her benefit. Section 1927 does not permit the court to sanction a party. *See* 28 U.S.C. § 1927; and *Browning*, 931 F.2d at 344. Thus, the district court clearly abused its discretion in sanctioning Scarlott.

Additionally, the district court authorized the wholesale reimbursement of all of the attorneys' fees which is not authorized by section 1927. *Id.* at 344-45. Moreover, the district court's order fails to provide a detailed finding that the proceedings were both unreasonable and vexatious. *See Meadowbriar*, 81 F.3d at 535. Though the order fails to provide the necessary finding and the district court abused its discretion, I will briefly address possible findings.

Based on the transcript of the hearing, the district court took great issue with Scarlott's counsel for a variety of reasons but appeared to be most focused on the length of the litigation. While acknowledging that the case did not meet the federal threshold, the court said: "A 35,000 maximum dispute has been prolonged by the addition and subtraction and replacement of the parties and constantly evolving, a series of arguments."

A review of the record, including the district court docket, does not reveal any vexatious or sanctionable conduct on the part of Scarlott.[3] This case was pending in state court over a year before the defendants improperly removed it to federal court. At least some of the conduct discussed by the district court at the hearing occurred while the matter was in state court. The district court cannot award sanctions for conduct that occurred in state court. *See Willy*, 915 F.2d 965, 968 n. 8, (5th Cir. 1990); and *Choo*, 764 F.2d 1148. The district court docket reveals various scheduling, conference and other orders entered by the court, which clearly indicate the court's participation in and management of the length of the litigation. There is no indication that Scarlott violated any of the district court's orders or failed to appear at any conferences or hearings. The number of Scarlott's filings, which included the expected and required

---

[3] However, the record arguably reveals sanctionable conduct on the part of Nissan with regard to a filing, which was later stricken upon the request of Scarlott's counsel and motion by Nissan, containing a defamatory and admittedly unsupported allegation that Scarlott's counsel was misusing narcotics and referencing his congestive heart failure.

matters, did not approach the numerous filings by the defendants, which included motions, supplements, answers, reports, designations, counterclaims, disclosures, notices of vacations, etc.

Despite the district court's conclusion that "a reasonable counsel would advise his client to replace the mirror at her own expense; and if that cures the problem, if nothing else, she has a fixed car," Scarlott's car was under warranty with Nissan. That warranty required any repairs to be performed by an authorized dealership. As stated previously, under *Browning*, an award under section 1927 may not shift the entire financial burden "[e]xcept when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in." *Browning*, 931 F.2d at 45. Any such proposition that the entire course of proceedings were unwarranted or should not have been commenced is disputed by counsel for Nissan's characterization of this as "a good case." Further, there is an invoice from the Nissan dealership that states "*NEW CAR WE OWE* INSTALL REAR VIEW MIRROR WITH HOMELINK" and says that "All Nissan Factory Parts and Service are covered for 12 Months or 12,000 Miles." Nissan was the manufacturer of the mirror. Hurricane installed the mirror. This is in no way a statement on the merits or lack thereof of the case, but rather added support for the proposition that it is impossible to say, at this point, whether the entire course of the proceedings were unwarranted and should not have been commenced.

Accordingly, for the reasons stated herein, I would vacate the district court's order awarding attorneys' fees and costs without remanding to the district court for reconsideration. Therefore, I respectfully dissent in part.